Thomas Schultz, Appellant, v. C. A. Sylvester et al., Appellees.

JUDGMENT: Conclusive Presumption as to Ownership. Joint judgments carry no *conclusive* presumption that each of the joint plaintiffs owns an equal portion of the judgment, *unless such judgments rest on such an issue.* It follows that the judgment defendant who has acquired, by assignment, a judgment against one of two joint judgment plaintiffs and who attempts to set off said acquired judgment against said joint judgment, may be met by a showing by the remaining joint judgment plaintiff that he (the latter) is, in fact, the sole owner of the joint judgment; and this is true irrespective of any priority in date of the judgment sought to be set off, or in its acquisition.

*Appeal from Floyd District Court.*—C. H. Kelley, Judge.

October 25, 1918.

Upon a counterclaim filed by the two Sylvesters in a case brought against them by the appellant, Schultz, the

Sylvesters obtained judgment against Schultz. Schultz claims to be the assignee of a judgment against appellee C. A. Sylvester, and thereunder attached the supposed interest of C. A. Sylvester in said joint judgment. The trial court declined to set off the judgment owned by Schultz against said joint judgment against Schultz, and plaintiff appeals. —*Affirmed.*

*J. H. Lloyd*, for appellant.

*H. J. Fitzgerald*, for appellees.

SALINGER, J.—I. In a suit brought by appellant, Schultz, the appellees Sylvester, on March 31, 1913, amended a counterclaim interposed in said suit by August Sylvester, to the effect of pleading that all claims against Schultz were the joint property of both the Sylvesters. Prior to and up to the time of this amendment to pleadings, and before any suit was pending wherein to interpose this counterclaim, one Vance obtained judgment against C. A. Sylvester, which is still unpaid. While said amended counterclaim was pending, and on January 5, 1914, Vance assigned his judgment to Schultz. Four days later, C. A. Sylvester assigned his interest in the counterclaim to August. Notwithstanding the assignment, judgment on the counterclaim was, on January 17th, entered in favor of both Sylvesters. On January 20th, Schultz levied the Vance judgment on what interest C. A. Sylvester might have in said counterclaim judgment. Later, Schultz sought to set off the Vance judgment against the counterclaim judgment. To sustain the attempt, he asserted that the Vance judgment was in existence long before the Sylvesters claimed anything of him, Schultz; that the assignment from Vance to Schultz is four days earlier than that from C. A. Sylvester to August; that the assignment to August was collateral security for payments made by August for C. A. Sylvester; and that August has a large amount of real prop-

erty in his name, which is the property of C. A. Sylvester, as security for said advances; and that the claimed assignment is fraudulent, and is an attempt to defeat the recovery by plaintiff on the judgment assigned to plaintiff by Vance. The cause was tried by the court; and, so far as express recitals go, it was adjudged that the judgment entered on the counterclaim in favor of the two Sylvesters was based solely on money furnished by August Sylvester; and that, as between the two Sylvesters, August is entitled to that judgment in its entirety. But as there was a general order and adjudication that the levy of the Vance judgment should be released, and that said judgment should not be offset, it was, under the issues, further held that the transfer from C. A. to August Sylvester was not merely collateral for advances that were otherwise abundantly secured, and that the assignment from one Sylvester to the other was not covinous and fraudulent. As the cause was tried by the court without a jury, and is on the law side, the questions before us are: (1) Whether the trial court had the right to determine that August Sylvester was the sole owner of the counterclaim judgment. (2) If it had that right, is its so finding wholly unsupported? (3) Is its finding that the assignment to August Sylvester was in good faith wholly lacking in support?

II. The contention that the court should not have gone into the question who owned the counterclaim judgment rests upon the argument that the prayer and the form of that judgment constitute an adjudication that said judgment is the property of both the Sylvesters, and that any attempt to show that one of them was the sole owner thereof is a prohibited impeachment of the record, and that sustaining such impeachment nullifies an estoppel by record. Many authorities are cited to the effect that a record imports absolute verity, and that no one may impeach it (among them is 23 Cyc. 855, and *Mornyer v. Cooper*, 35

Iowa 257, at 260) ; and that a judgment concludes as to all
that is necessarily found by the judgment (*State Nat. Bank
v. North Western U. Packet Co.*, 35 Iowa 226). Cer-
tainly, there may not be such impeachment, nor escape from
what a judgment settles. But that does not settle that any
such impeachment was attempted in this case, or that
estoppel by record or any other estoppel bars August Syl-
vester from now asserting that a judgment running in favor
of himself and C. A. Sylvester is the sole property of Au-
gust. If the prayer for the counterclaim judgment and
its rendition as prayed are to constitute a binding adjudi-
cation that such judgment is joint property, it must first
be made to appear that the issue joined made it necessary
to *decide* whether the judgment was the joint property of
the two Sylvesters, rather than the sole property of August.
To be sure, the answer of the Sylvesters declared that the
claim sued on was joint property; and we fully agree with
the decisions presented to the effect that any admission
made by the Sylvesters in pleading may be made evidence.
But that does not solve whether there was any necessity
to *decide* the ownership, as between the two Sylvesters. No
party to the suit was interested in or made any attempt to
have this question of ownership determined. The Syl-
vesters made an argument for desiring to have the judg-
ment put in joint form, but they tendered no contest on the
ownership. Schultz joined no issue on that. His position
was that neither of the Sylvesters, nor they jointly, had
right to any judgment against him. The effective decision
against Schultz was that he owed. The declaration that
that right belonged to the two Sylvesters had no effect ex-
cept that, if Schultz had satisfied the judgment by paying
half to each of the Sylvesters, neither could thereafter have
asserted that Schultz should have paid him all of the judg-
ment. To a certainty, the declaration of the court that
August was entitled to all of the judgment was not and was

not thought to be an adjudication, as between the two Sylvesters. As said, they were not contending with each other on that hearing. No attempt to impeach a record was made. All done was an effort to show who was the owner of property. When it comes to a creditor's seizing a judgment, it is not sufficient that in form the judgment is that of the debtor; it must in truth belong to him. See *De Laval Sep. Co. v. Sharpless*, 134 Iowa 28; *Gallaher v. Pendleton*, 55 Iowa 142; *Benson v. Haywood*, 86 Iowa 107. Of course, an estoppel might arise which would bar the true owner from asserting a claim that the form of the judgment did not truly state the ownership of the judgment. See *Beaver Valley Bank v. Cousins & Spooner*, 67 Iowa 310. This record exhibits nothing whereon Schultz may base such an estoppel.

It is but begging the question to cite authorities for the proposition that a judgment may be the subject of levy and of set-off. Code Sections 3465, 3977, 3978. True as it is that it may be seized or set off, it is also true that, to subject it to either seizure or set-off, it must be either jointly or severally the property of the judgment debtor. See *Bell v. Perry & Townsend*, 43 Iowa 368.

III. The court found that, as between the Sylvesters, August was the sole owner of the judgment against Schultz. Despite the fact that the judgment in question was, in form, a judgment in favor of both the Sylvesters, it cannot be seriously claimed that the form of this judgment deprived the court of the right to hold, between the Sylvesters, that in truth it belonged to but one of them. Before the judgment was ever entered, C. A. Sylvester assigned to August his interest in the claim upon which judgment was finally obtained. Certainly, the subsequent entry of the judgment in the form that it was entered did not cancel that transfer, as between the parties to the transfer. If no third party had intervened, surely August could establish that, on

January 9th, his brother assigned to him a claim upon which a judgment was entered on the 17th of January following, and that, though said judgment was entered in favor of himself and his assignor, he, the assignee, owned his own interest in the joint judgment, and, by assignment, the interest of his assignor. Certainly, as between the two Sylvesters, a joint judgment could be converted into the property of one of the judgment creditors by assignment from the other. This being so between the two Sylvesters, why is it not so as to Schultz? Of course, we agree that the assignment from brother to brother is not invested with the peculiar character of negotiable paper, and passes to the assignee charged with all the equities which could be asserted against it in the hands of the assignor. See *Ballinger v. Tarbell*, 16 Iowa 491. But the assignment from Vance to Schultz is in the same class. Schultz took that assignment at the peril of having it proved that he could not collect the assigned judgment out of the property standing in the name of his debtor, if it were proved that, in truth, it did not belong to the debtor. As against such an assignee, and in the absence of some estoppel, it was provable that specific property was, in truth, not subject to seizure by him.

The finding of the court that the property which Schultz sought to subject to his judgment, was not the property of Schultz's debtor, is not so lacking in support as that we may interfere. We hold further that, in the state of the evidence, we may not interfere with the finding that the assignment to August was not covinous and in bad faith.

This reduces the position of the appellant to the one point that the Vance judgment was in existence long before the suit was begun in which the counterclaim judgment was entered, and that Schultz became the assignee of that judgment four days earlier than the execution of the assignment from C. A. Sylvester to August Sylvester. We

are unable to see how the priority in date has any bearing on this case. Until a levy was made under the Vance judgment, the judgment debtor was at liberty to transfer any of his property, if he did so for sufficient consideration, and in good faith. Assigning the judgment gave it no attribute that it did not have before. As against a good-faith transfer of property by the judgment debtor, the mere existence of the Vance judgment before and after its assignment effected nothing. In essence, the trial court holds that Schultz was attempting to satisfy a judgment against C. A. Sylvester upon property which C. A. Sylvester never did own, or, if he did own it, transferred before it was seized under the Vance judgment. Having found that we may not interfere with either of these essential holdings, there is an end.—*Affirmed.*

PRESTON, C. J., LADD and EVANS, JJ., concur.